**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

**CHARLES C. CHITWOOD II**

        **Plaintiff,**

  **v.**

**HENRY CASEY VOSBEIN; VOS**
**HOLDINGS LLC a/k/a VOSCOM LLC; and**
**VOSCOM LLC,**

        **Defendants.**

**CIVIL NO. 2:19-CV-11584**

<u>**COMPLAINT**</u>

Plaintiff Charles C. "Clayton" Chitwood II asserts his causes of action against defendants Henry Casey Vosbein, Vos Holdings, LLC a/k/a Voscom, LLC, and Voscom, LLC as follows:

**THE PARTIES**

1.    Plaintiff is Charles C. "Clayton" Chitwood II, who is a person of age and majority and a resident and citizen of Louisiana.

2.    Defendant is Henry Casey Vosbein ("Casey Vosbein"), who is a person of age and majority, and upon information and belief a citizen of Florida.

3.    Defendant is Vos Holdings, LLC a/k/a Voscom LLC ("Vos Holdings"), which upon information and belief is a foreign limited liability company organized in Delaware.

4.    Upon information and belief, Vos Holdings was originally a two-member, limited liability company.

5.    Upon information and belief, the original two members were Casey Vosbein and James Salter.

6.    Upon information and belief, Vos Holdings subsequently and formally changed its name to Voscom LLC (and, in this complaint, to avoid confusion, Vos Holdings LLC a/k/a Voscom

LLC is simply referred to as "Vos Holdings").

7.      Upon information and belief, at the time this lawsuit was filed, Vos Holdings has only one member, Casey Vosbein.

8.      Thus, upon information and belief, Vos Holdings is a citizen of Florida.

9.      Defendant is Voscom LLC ("Voscom"), which upon information and belief is a foreign limited liability company organized in the United States Virgin Islands territory.

10.     To be clear, Vos Holdings LLC a/k/a Voscom LLC (the Delaware entity) is a separate entity from Voscom LLC (the Virgin Islands entity).

11.     Upon information and belief, Voscom is a single-member, limited liability company.

12.     Upon information and belief, Voscom's sole member is James Salter, who upon information and belief is a citizen of the United States Virgin Islands territory.

13.     Thus, upon information and belief, Voscom is a citizen of the Virgin Islands.

## JURISDICTION AND VENUE

14.     The Court has subject-matter jurisdiction over Mr. Chitwood's FLSA unpaid minimum wage and overtime wage claims in this matter pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 201 *et seq*. (the Fair Labor Standards Act, as amended), as more particularly set-out herein.

15.     The Court has supplemental, subject-matter jurisdiction over Mr. Chitwood's Louisiana state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to his federal law claims that they form part of the same case or controversy as more particularly set-out herein.

16.     The Court has personal jurisdiction over Casey Vosbein as he regularly transacts or transacted business in Louisiana, has created, registered, and owns one or more other limited

liability companies located in Louisiana, regularly employs or has employed Louisiana citizens, committed the specific unlawful acts within Louisiana giving rise to the causes of action in this case, and derives or has derived substantial revenue from the services he or his companies provide in Louisiana.  Thus, Mr. Vosbein has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

17.     The Court has personal jurisdiction over Vos Holdings LLC a/k/a Voscom LLC (the Delaware entity) as it regularly transacts or transacted business in Louisiana, regularly employs or has employed Louisiana citizens, committed the specific unlawful acts within Louisiana giving rise to the causes of action in this case, and derives or has derived substantial revenue from the services it provides or provided in Louisiana.  Thus, Vos Holdings has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

18.     The Court has personal jurisdiction over Voscom LLC (the Virgin Islands entity) because, upon information and belief, Casey Vosbein and James Salter specifically agreed in approximately August 2018 to transfer and assign all assets and liabilities owned by Vos Holdings LLC a/k/a Voscom LLC (the Delaware entity) to Voscom LLC, such that once the transfer and assignment was complete, Voscom (the Virgin Islands entity) was the assignee and owner of the specific statutory and tort liabilities giving rise to this case.  Further, upon information and belief, at least Casey Vosbein had actual notice of the claims giving rise to this lawsuit prior to the creation of Voscom and again prior to the transfer of liabilities to Voscom, and thus knew that Voscom was acquiring the specific claims giving rise to this case.  Thus,

under the specific circumstances of the assignment of liabilities from Vos Holdings to Voscom, Voscom has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the parties contracted for Mr. Chitwood's employment and engaged in the FLSA and state-law wage violations alleged in this matter, and Mr. Chitwood's resulting harm was suffered, in this jurisdiction (specifically, St. Tammany Parish).

## FACTS

**A.      Background – Clayton Chitwood**

20.     Clayton Chitwood is married with three sons and one daughter.

21.     Mr. Chitwood currently lives with his wife and his four children in Covington, Louisiana.

22.     Mr. Chitwood relies on his work, labor, and earned wages to support his family.

**B.      Background – Casey Vosbein and the Company Defendants**

23.     Upon information and belief, Casey Vosbein and James Salter organized Vos Holdings in Delaware in February 2017.

24.     Upon information and belief, almost immediately thereafter, in late March 2017, Vos Holdings amended its organizational documents to change its name to Voscom, LLC, although it continued to do business as Vos Holdings (and, for the purpose of clarity in this complaint, Vos Holdings a/k/a Voscom is simply referred to as Vos Holdings).

25.     Vos Holdings purported to be in the business of providing telecommunications infrastructure to Caribbean countries and territories.

26.     During 2017, upon information Vos Holdings's actual or de facto headquarters was

4

located in Covington, Louisiana.

27.     Upon information and belief, and as described further within this complaint, Casey Vosbein and James Salter undercapitalized Vos Holdings such that the company could not afford to make payroll to Mr. Chitwood just five months after its creation.

**C.     Casey Vosbein Maintained Exclusive Operating Control of Vos Holdings**

28.     Upon information and belief, the only person with operating control over the business of Vos Holdings and the ultimate management of its employees was Casey Vosbein.

29.     Upon information and belief, Vosbein worked in the nature of the chief executive of Vos Holdings, while Mr. Salter worked as a silent investor.

30.     Upon information and belief, Vosbein delegated his day-to-day management authority to another employee or company officer named Bill Barillaro, however Barillaro would consult with Vosbein on all material employment matters regarding Vos Holding's employees, including employee pay rates, the maximum number of hours an employee could work, the availability of overtime hours to employees, and whether the company would pay employees the amount of wages they were owed during times when Vos Holdings did not have sufficient cashflow to make payroll.

**D.     Casey Vosbein Intentionally Misclassifies Mr. Chitwood as an Independent Contractor**

31.     Vos Holdings employed several individuals, one of whom was plaintiff Clayton Chitwood.

32.     To the best of his recollection, Mr. Chitwood worked for Vos Holdings from approximately April 2017 until he was laid off at some point prior to April 12, 2018.

33.     At all times during his work for Vos Holdings and in all material respects, Mr. Chitwood was a bona fide employee who Vos Holdings purposefully misclassified as an independent

contractor.

34.     Upon information and belief, the person who decided to misclassify Vos Holdings's workers was Casey Vosbein.

35.     Upon information and belief, Casey Vosbein misclassified Mr. Chitwood as an "independent contractor" to avoid paying any overtime wages or employment taxes attendant to the employment of workers versus independent contractors.

36.     Upon information and belief, at all times that Vos Holdings employed Mr. Chitwood, Casey Vosbein was aware of the company's obligations to pay its employees at least federal minimum wage and time-and-a-half for all hours worked in excess of forty hours during any regular workweek.

37.     At no time did Vos Holdings confect or even attempt to confect any written or verbal independent contractor agreement with Mr. Chitwood.

38.     During a text-message exchange between Casey Vosbein and Mr. Chitwood on April 12, 2018, Vosbein admittedly described Mr. Chitwood as an "hourly worker" who "turned in timecards" for his pay.

39.     Mr. Chitwood exercised no discretion or managerial decision-making whatsoever in his job.

40.     During all relevant times to this case, Mr. Chitwood was required to keep and submit timecards or timesheets to receive his hourly pay.

41.     At all times Mr. Chitwood reported to his supervisor, Mr. Barillaro, who was himself an employee or officer of Vos Holdings, to receive work assignments and to report that those assignments had been completed.

42.     Mr. Chitwood's work responsibilities were to run errands for the company as directed by

Mr. Barillaro, such as physically purchasing local supplies (as in, going to a vendor and picking up supplies), moving equipment, maintaining inventory, and performing various manual labor duties.

43.     Mr. Chitwood was, in all material respects, a non-exempt day laborer for Vos Holdings.

44.     Mr. Chitwood had no money or other overhead invested in his job as day laborer, because all aspects of his job, how he performed his job, when he performed his job, what he used to perform his job, where he performed his job, and what jobs he was given were all exclusively controlled and provided by Vos Holdings.

45.     Mr. Chitwood had no opportunity for loss at his job because he had no capital or finances invested in the job.

46.     Mr. Chitwood's opportunity for profit was exclusively controlled by Vos Holdings because Vos Holdings controlled how many hours Mr. Chitwood worked, when, and where.

47.     Mr. Chitwood's work duties required no special skill or training, because the nature of his work was simply manual labor and running errands.

48.     Vos Holdings paid Mr. Chitwood for his wages based on the number of hours he worked every day, not per contract.

49.     Finally, after Mr. Chitwood worked more than 40 hours in two successive weeks in July 2017, Mr. Vosbein indicated that Mr. Chitwood should not work overtime hours because of the amount of wages Mr. Chitwood was earning.

**E.     Casey Vosbein and Vos Holdings Refuse to Timely Pay Mr. Chitwood any Wages at All for Approximately 293 Hours of Work Spanning Seven Workweeks**

50.     From approximately April 2017 through July 7, 2017, Vos Holdings employed Mr. Chitwood at the rate of $50 per hour.

51.     From approximately July 8, 2017 through the end of his employment, Vos Holdings

unilaterally cut Mr. Chitwood's pay in half and paid him at the rate of $25 per hour.

52.     From approximately April 2017 through August 2018, Mr. Chitwood was paid weekly on every Friday, or was supposed to be paid weekly on every Friday, for that week's work.

53.     Starting in April 2017, Mr. Chitwood was directed by Mr. Vosbein to pay himself from Vos Holdings's petty cash supply, which Mr. Chitwood did by requesting a check made out to "cash" from another Vos Holdings clerical worker.

54.     However, beginning at approximately the end of May 2017, the supply of petty cash had been exhausted, and Vos Holdings completely stopped paying Mr. Chitwood for his hours worked citing a lack of cashflow.

55.     Upon information and belief, Vos Holdings had ample cash flow to pay Mr. Chitwood and its other employees, but Vos Holdings was undercapitalized, and Casey Vosbein simply prioritized other company expenditures over making payroll.

56.     Alternatively, during this time period, Vos Holdings refused to pay Mr. Chitwood for his hours worked simply because Mr. Vosbein did not want to pay Mr. Chitwood what Mr. Vosbein considered to an excessive amount of wages.

57.     To the best of Mr. Chitwood's recollection and review of records, Vos Holdings did not make a regular payday payment to Mr. Chitwood until late July or early August 2017, and then it paid Mr. Chitwood every Friday or every other Friday through the end of Mr. Chitwood's employment by check or direct deposit.

58.     From approximately May 27, 2017 until July 15, Mr. Chitwood worked a total of 293 hours, 20 of which were hours worked in excess of 40 hours per regular workweek.

59.     Based on his hourly rates at the time, and excluding any overtime hours worked, Vos Holdings actually owed Mr. Chitwood $12,650 in regular wages for these hours worked.

60.     Additionally, during the workweek beginning on Saturday, July 1 and ending on Friday, July 7, 2017, Mr. Chitwood worked 53 total hours, 13 of which were over 40, at his regular rate of $50 per hour.

61.     Under the FLSA, Vos Holdings owed Mr. Chitwood time-and-a-half his actual rate of $50 per hour for these 13 hours of overtime work, equaling $975 in overtime wages, and Vos Holdings should have paid Mr. Chitwood these wages on his regularly scheduled payday of Friday, July 7.

62.     Additionally, during the workweek beginning on Saturday, July 8 and ending on Friday, July 14, Mr. Chitwood worked 47 total hours, 7 of which were over 40, at his regular rate of $25 per hour.

63.     Under the FLSA, Vos Holdings owed Mr. Chitwood time-and-a-half his actual rate of $25 per hour for these 7 hours of overtime work, equaling $262.50 in overtime wages, and Vos Holdings should have paid Mr. Chitwood these wages on his next, regularly scheduled payday of Friday, July 14, 2017.

64.     Additionally, during the workweek beginning on Saturday, July 15 and ending on Friday, July 21, Mr. Chitwood worked 45 total hours, 5 of which were over 40, at his regular rate of $25 per hour.

65.     Under the FLSA, Vos Holdings owed Mr. Chitwood time-and-a-half his actual rate of $25 per hour for these 5 hours of overtime work, equaling $87.50 in overtime wages, and Vos Holdings should have paid Mr. Chitwood these wages on his next, regularly scheduled payday of Friday, July 21, 2017

66.     Additionally, during the workweek beginning on Saturday, July 29 and ending on Friday, August 4, Mr. Chitwood worked 50 total hours, 10 of which were over 40, at his regular rate of

$25 per hour.

67.     Under the FLSA, Vos Holdings owed Mr. Chitwood time-and-a-half his actual rate of $25 per hour for these 10 hours of overtime work, equaling $175 in overtime wages, and Vos Holdings should have paid Mr. Chitwood these wages on his next, regularly scheduled payday of Friday, August 4, 2017.

68.     Thus, during the time of May 13 through July 15, 2017, Vos Holdings owed Mr. Chitwood a total of $12,650 in regular wages and $1,500 in overtime wages, for total unpaid wages of $14,150.

69.     Likewise, based on his total hourly work during the time, and calculated at the federal minimum wage of $7.25 per hour, Vos Holdings owed Mr. Chitwood federal minimum wages of $2,124.25.

70.     Vos Holdings did not pay Mr. Chitwood any money for these 293 hours worked, including Mr. Chitwood's 20 hours of overtime work (or his additional 15 hours of overtime worked from July 15 through August 4, 2017) until approximately August 19, 2017, which was far beyond the next regularly scheduled payday for any and all of the unpaid 293 hours worked by Mr. Chitwood from May 13, 2017 through July 15, 2017 (as well as for the 15 hours of overtime Mr. Chitwood worked from July 15 through August 4, 2017).

71.     Prior to August 19, 2017, Mr. Chitwood repeatedly demanded payment of his unpaid wages from Mr. Barrillaro.

72.     Mr. Barrillaro responded that Casey Vosbein had indicated that Vos Holdings did not have the cashflow to pay Mr. Chitwood, although this appeared to be false, because Vosbein, Barrillaro, and other company employees and officers were flying to the Caribbean using company funds, purchasing various equipment or engaging in other business, and generally

spending company money on expenditures other than making payroll.

73.     On or about August 16, 2017, Barrilaro emailed Vosbein and wrote "[w]e ne[e]d to pay [C]layton[,] here is a breakdown of his time."

74.     Later, on August 16, Vosbein wrote back to Barrilaro "[t]his is not possible. There is no way we can pay him this much money! I can't justify it to James [Salter] or to our bank account. We cannot afford this. We do not pay ANYONE (including you and me) this much money. I also know that he took his pay from petty cash in June. I know you like him but this is not something we can do. Call me and we can discuss."

75.     However, or about August 19, 2017, after further demands from Mr. Chitwood, Vosbein authorized Vos Holdings to pay Mr. Chitwood $7,300 in late wages against the total earned but unpaid wages as described in this complaint.

76.     This partial payment was at least one month beyond the appropriate, next scheduled payday for when the wages were due.

77.     After making this payment, Vos Holdings still owed Mr. Chitwood $6,850 in total unpaid wages.

78.     To date, Vos Holdings has never paid Mr. Chitwood these earned wages despite Mr. Chitwood's repeated requests.

**F.     Vos Holdings Terminates Mr. Chitwood's Employment, and Mr. Chitwood Demands Payment for His Earned but Unpaid Wages**

79.     To the best of Mr. Chitwood's recollection, at some point shortly before April 12, 2018, Mr. Barrillaro informed Mr. Chitwood that Vosbein was terminating both Barrillaro and Mr. Chitwood's employment because Vos Holdings did not have sufficient cashflow to maintain their employment, although again this appears to be false.

80.     On April 18, 2018, Mr. Chitwood texted Casey Vosbein and again demanded payment of his earned but unpaid wages arising from his unpaid work during the summer of 2017.

81.     Vosbein replied "[w]orking on figuring it out Clayton. You were paid [1k] a week as a hourly worker and you turned in time cards for the same exact hours every week. You also were not there 12/15 times that [I] stopped by. I have been more then [sic] generous. We are refinancing currently and will pay our debts as soon as we are able[.]"

82.     Shortly after his termination, Mr. Chitwood also demanded from Mr. Barriaro, both in person at the Covington headquarters and over the phone, payment of his earned but unpaid wages arising from his work during June, July, and August 2017.

83.     To date, neither Vos Holdings nor Casey Vosbein has ever paid Mr. Chitwood the $6,850 owed to him in earned but unpaid wages.

## CAUSES OF ACTION

### A.     Unpaid Minimum Wages and Overtime Wages under the Fair Labor Standards Act Against Vos Holdings LLC a/k/a Voscom LLC

84.     Mr. Chitwood states a cause of action against Vos Holdings LLC a/k/a Voscom LLC for unpaid minimum wages and overtime wages and all other available damages under the Fair Labor Standards Act, codified at 29 U.S.C. § 201 *et seq.*

85.     Under the Fair Labor Standards Act, "[e]very employer shall pay to each of his employees . . . not less than . . . $7.25 an hour . . . ." 29 U.S.C. § 206(a)(1).  Likewise, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  An employer who violates the FLSA minimum wage or overtime provisions is liable to the employee for actual unpaid wages "as well as an 'additional equal amount as

liquidated damages.'"   *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) (citing 29 U.S.C. § 216(b) (regarding overtime wages specifically).  A prevailing employee is also entitled to his reasonable attorney's fees.  *Id.* at 502.

86.      To determine whether a worker is an employee protected under the FLSA versus an "independent contractor," the focus is on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).   Whether the employer or employee subjectively believes that the worker is an independent contractor and not an employee is irrelevant, because "[s]ubjective beliefs cannot transmogrify objective economic realities. A person's subjective opinion that he is a businessman rather than an employee does not change his status." *Id.* at 346.  Instead, to determine whether a worker is economically dependent on the employer, the court considers "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.* at 343.

87.      In this case, as alleged, Vos Holdings employed Mr. Chitwood as a bona fide employee, despite the fact that Vos Holdings purposefully misclassified Mr. Chitwood as an independent contractor to avoid the various obligations under the FLSA attendant with the employment of, rather than the contracting with, workers.  Specifically, Vos Holldings utilized Mr. Chitwood as an unskilled day laborer; Vos Holdings did not assign any discretionary or professional job duties to Mr. Chitwood whatsoever; Vos Holdings controlled the amount of hours that Mr. Chitwood worked; Vos Holdings unilaterally set Mr. Chitwood's pay and then unilaterally cut

that pay by 50% after Mr. Chitwood had worked for the company only a few months; Vos Holdings unilaterally decided to lay off Mr. Chitwood when it suited the company to do so; Vos Holdings did not attempt to confect any written or verbal independent contractor agreement with Mr. Chitwood; Casey Vosbein, the owner of Vos Holdings and the sole executive who exercised total occupational control of the company, admitted to Mr. Chitwood in a text message that Mr. Chitwood was an "hourly worker" who submitted time cards for his pay; Mr. Chitwood had no investment or risk in Vos Holdings, and Mr. Chitwood was completely dependent on the company to earn his livelihood.  In all respects, Mr. Chitwood was a non-exempt employee of Vos Holdings.

88.     As alleged, during his employment during the summer of 2017, Mr. Chitwood worked 293 hours for which Vos Holdings did not timely pay Mr. Chitwood, 20 of which were overtime hours in excess of forty hours during a regular workweek.

89.     As alleged, Mr. Chitwood worked an additional 15 hours of overtime that were not timely paid at the statutorily required rate.

90.     The total amount of overtime wages earned by Mr. Chitwood but not timely paid by Vos Holdings equals $1,500.

91.     The total amount of minimum wages earned by Mr. Chitwood but not timely paid by Vos Holdings equals $2,124.25.

92.     As alleged, Vos Holdings, through its owner Casey Vosbein, was fully aware of its obligations to pay Mr. Chitwood both federal minimum wage and overtime wages, and Mr. Vosbein intentionally failed to pay Mr. Chitwood these wages either because Vos Holdings was undercapitalized and Mr. Vosbein prioritized other company expenditures over making payroll; or, alternatively, simply because Mr. Vosbein did not want to pay Mr. Chitwood what Mr.

Vosbein considered to be an excessive amount of earned wages.

93.     Finally, as alleged, because Vos Holdings willfully failed to timely pay Mr. Chitwood either minimum wage or overtime wages for the hours he actually worked, Vos Holdings owes Mr. Chitwood liquidated damages in the amount of the untimely paid minimum and overtime wages.

94.     Although Vos Holdings eventually paid Mr. Chitwood $7,300 of the total amount of Mr. Chitwood's earned wages of $14,150, that balance still owed is greater than the total amount of minimum and overtime wages owed by Vos Holdings to Mr. Chitwood, and Mr. Chitwood specifically claims the full amount of these minimum and overtime wages in this lawsuit.

95.     Accordingly, Vos Holdings owes Mr. Chitwood the total amount of $2,124.25 in earned but unpaid (or not timely paid) minimum wages, $1,500 in earned but unpaid (or not timely paid) overtime wages, plus liquidated damages, plus Mr. Chitwood's reasonable attorney's fees and costs incurred in this litigation.

**B.      Unpaid Minimum Wages and Overtime Wages under the Fair Labor Standards Act Against Casey Vosbein**

96.     Alternatively, Mr. Chitwood states a cause of action against Casey Vosbein for unpaid minimum wages and overtime wages and all other available damages under the Fair Labor Standards Act, codified at 29 U.S.C. § 201 *et seq.*

97.     An "employer" under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In the Fifth Circuit, an individual may be liable for a company-employer's FLSA violations when that person exercises "operating control" control over the company, such that the person "(1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee

records." *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 (5th Cir. 2012).

98.     In this case, as alleged, Casey Vosbein held exclusive and total operating control over Vos Holdings, and Casey Vosbein specifically hired Mr. Chitwood, specifically set Mr. Chitwood's hourly rate of pay, specifically restricted his available overtime hours, and specifically refused to pay Mr. Chitwood's earned wages both before and after his termination. Further, Mr. Vosbein delegated his day-to-day management authority to Bill Barrillaro, and Mr. Barrillaro terminated Mr. Chitwood's employment.  In all respects, Casey Vosbein not only possessed total operating control of Vos Holdings, but in reality Vos Holdings appears to have been merely the alter-ego of Mr. Vosbein.

99.     Accordingly, Casey Vosbein owes Mr. Chitwood, in solidary liability with Vos Holdings, the total amount of $2,124.25 in earned but unpaid (or not timely paid) minimum wages, $1,500 in earned but unpaid (or not timely paid) overtime wages, plus liquidated damages, plus Mr. Chitwood's reasonable attorney's fees and costs incurred in this litigation.

**C.      Unpaid Minimum Wages and Overtime Wages under the Fair Labor Standards Act Against Voscom LLC (the Virgin Islands Entity)**

100.    Alternatively, Mr. Chitwood states a cause of action against Voscom LLC (the Virgin Islands entity) for unpaid minimum wages and overtime wages and all other available damages under the Fair Labor Standards Act, codified at 29 U.S.C. § 201 *et seq.*

101.    As alleged, Casey Vosbein and James Salter voluntarily assigned all assets and liabilities from Vos Holdings to Voscom in approximately August 2018.

102.    Upon information and belief, at the time, at least Casey Vosbein had actual knowledge of the FLSA claims alleged by Mr. Chitwood giving rise to this case, and, upon information and belief, those liabilities were likewise assigned to Voscom.

103.    Accordingly, Voscom LLC owes Mr. Chitwood, in solidary liability with Vos Holdings

and Casey Vosbein, the total amount of $2,124.25 in earned but unpaid (or not timely paid) minimum wages, $1,500 in earned but unpaid (or not timely paid) overtime wages, plus liquidated damages, plus Mr. Chitwood's reasonable attorney's fees and costs incurred in this litigation.

**D.     Unpaid Wages under Louisiana Revised Statute 23:631 against Vos Holdings LLC**

104.    Mr. Chitwood states a cause of action against Vos Holdings, LLC for his earned but unpaid wages pursuant to Louisiana's so-called "Last Paycheck Law" codified at La. Rev. Stat. Ann. § 23:631 *et seq.*

105.    In this case, as alleged, Vos Holdings employed Mr. Chitwood as a bona fide employee.

106.    As alleged, Mr. Chitwood worked 293 hours for which Vos Holdings did not timely pay him, 20 of which were overtime hours in excess of forty hours during a regular workweek.

107.    As alleged, Mr. Chitwood worked an additional 15 hours that were no timely paid at the statutorily required rate.

108.    The total amount of wages earned by Mr. Chitwood but not timely paid by Vos Holdings equaled $14,150.

109.    Vos Holdings eventually paid Mr. Chitwood $7,300 of the total amount of earned wages of $14,150, and thus owed Mr. Chitwood $6,850 at the time of his termination shortly before April 12, 2018.

110.    Shortly after his termination, Mr. Chitwood demanded payment of these wages multiple times, including once directly by text to Casey Vosbein on April 12, 2018, and then again, in person, to his immediate supervisor Bill Barrillaro, both at Mr. Chitwood's regular place of payment at Vos Holdings's corporate headquarters in Covington, Louisiana and also by phone, but Vos Holdings has continued to fail to pay Mr. Chitwood the amount of wages still owed.

111.    More than 90 days have elapsed since the time Mr. Chitwood first demanded payment of his earned wages after his termination at some point shortly before April 12, 2018.

112.    Accordingly, Vos Holdings owes Mr. Chitwood earned but unpaid wages of $6,850, plus statutory damages equal to 90 days of Mr. Chitwood's daily rate of pay, plus his reasonable attorney's fees and costs incurred in this litigation.

**E.      Unpaid Wages under Louisiana Revised Statute 23:631 against Casey Vosbein**

113.    Alternatively, Mr. Chitwood states a cause of action against Casey Vosbein for his earned but unpaid wages pursuant to Louisiana's so-called "Last Paycheck Law" codified at La. Rev. Stat. Ann. § 23:631 *et seq.*

114.    As alleged, Casey Vosbein purposefully refused to pay Mr. Chitwood his earned wages because Vosbein had undercapitalized Vos Holdings and preferred to pay other company expenses before making payroll.

115.    Upon information and belief, Mr. Vosbein merely used Vos Holdings as his alter-ego in an attempt to his own personal business without incurring any personal financial liability.

116.    Accordingly, Casey Vosbein owes Mr. Chitwood, in solidary liability with Vos Holdings, earned but unpaid wages of $6,850, plus statutory damages equal to 90 days of Mr. Chitwood's daily rate of pay, plus his reasonable attorney's fees and costs incurred in this litigation.

**F.      Unpaid Wages under Louisiana Revised Statute 23:631 against Voscom LLC (the Virgin Islands Entity)**

117.    Alternatively, Mr. Chitwood states a cause of action against Voscom LLC (the Virgin Islands entity) for his earned but unpaid wages pursuant to Louisiana's so-called "Last Paycheck Law" codified at La. Rev. Stat. Ann. § 23:631 *et seq.*

118.    As alleged, Casey Vosbein and James Salter voluntarily assigned all assets and liabilities from Vos Holdings to Voscom in approximately August 2018.

119.    Upon information and belief, at the time, at least Casey Vosbein had actual knowledge of the FLSA claims alleged by Mr. Chitwood giving rise to this case, and, upon information and belief, those liabilities were likewise assigned to Voscom.

120.    Accordingly, Voscom LLC owes Mr. Chitwood, in solidary liability with Vos Holdings and Casey Vosbein, earned but unpaid wages of $6,850, plus statutory damages equal to 90 days of Mr. Chitwood's daily rate of pay, plus his reasonable attorney's fees and costs incurred in this litigation.

**JURY DEMAND**

Mr. Chitwood requests a trial by jury on all issues.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Charles C. "Clayton" Chitwood II prays that this complaint be deemed good and sufficient; that it and summons be served upon defendants Henry Casey Vosbein, Vos Holdings LLC a/k/a Voscom LLC, and Voscom LLC; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against all defendants for all damages and equitable relief due to plaintiff, including his unpaid federal minimum wages, unpaid federal overtime wages, unpaid state-law wages, statutory liquidated damages, compensatory damages, litigation costs, reasonable attorney's fees, and legal interest from the date of demand, and for all other general and equitable relief to which plaintiff is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for Clayton Chitwood*